Delores LeGARE

v.

UNIVERSITY OF PENNSYLVANIA MEDICAL SCHOOL.

Civ. A. No. 79–3151.

United States District Court, E. D. Pennsylvania.

April 17, 1980.

---

Richard J. Conn, Philadelphia, Pa., for plaintiff.

Kathryn H. Levering, Drinker, Biddle & Reath, Susan C. Waltman, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

Delores LeGare, a black woman, claims that she was discharged from her job at the University of Pennsylvania Medical School because of her race and sex and in retaliation for filing a discrimination charge with the EEOC. Read generously,[1] the complaint seeks to state claims for relief under title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to –17; the Equal Pay Act of 1963, 29 U.S.C. § 206(d); the Civil Rights Acts of 1866 and 1871, 42 U.S.C. §§ 1981, 1983 and 1985(3); and the Fourteenth Amendment.

The defendant Medical School has moved to dismiss the complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. F.R.Civ.P. 12(b) 1, 6. Defendant contends that the title VII sex claim is jurisdictionally deficient because plaintiff failed to raise it before the EEOC; that the equal pay claim is legally insufficient and time-barred; that there is no allegation of state action to support the § 1983 claim; that § 1981 does not cover sex discrimination; and that no right of action should be implied under the Fourteenth Amendment for injuries redressable through a statutory private remedy.[2] To these arguments defendant adds the formal objection that the complaint is not divided into counts, see F.R. Civ.P. 10(b), and is otherwise vague. Finally, the defendant argues that it is not amenable to suit because the University of Pennsylvania Medical School is not a legal entity independent of the University as a whole.

Taking the well-pleaded allegations in the complaint as true, the plaintiff was employed by the University of Pennsylvania in several secretarial or clerical positions from 1966 to 1977. The complaint describes with specificity three instances of discrimination. First, in February 1976 plaintiff was by-passed in favor of a white woman for promotion to the position of "Dean's Assistant", although LeGare was qualified for the job. Second, later in 1976 while she was employed in the University's Personnel Department, plaintiff was placed on disciplinary probation and later terminated on the pretext that she was rude to her fellow workers. Third, after she was called back to work as a secretary in the Medical School, plaintiff was once again discharged, this time for refusing her supervisor's request that she submit to an examination by a University-approved doctor. At the time of her discharge plaintiff had been absent from work for two months due to illness.

Plaintiff claims that she was treated in this manner because of her sex and race, and, in the case of the final discharge, because she filed a charge with the EEOC. In addition to recounting plaintiff's individual employment history, the complaint broadly attacks virtually every aspect of the defendant's employment policy, including seniority, job specifications and assignments, wages, recruiting and hiring, transfer and promotion, layoffs and recall, sick leave, issuance of paychecks, discharges and affirmative action. Each of these practices is said to have adversely affected the plaintiff because of her race and sex.

## I. Title VII

■ Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under title VII. 42 U.S.C. § 2000e–5(e); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). According to the complaint, LeGare filed two charges with the EEOC: the first on July 6, 1977 while she was still employed, alleging racial discrimination; the second on August 31, 1977 after her discharge, alleging racial discrimination

---

1. Plaintiff's claims for relief are stated as jurisdictional averments.

2. Plaintiff concedes that her § 1985(3) claim for conspiracy to deprive her of rights guaranteed by title VII is barred by the decision of the Supreme Court last term in *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).

and retaliation. The defendant moves to dismiss the sex discrimination portion of the title VII claim on the ground that plaintiff failed to check the box marked "sex" on the EEOC complaint forms or otherwise indicate to the agency that her discharge was sex-related.

This problem—the relation of the permissible scope of a title VII action to the EEOC charge—has often perplexed the federal courts. The difficulty lies in the tension between the judicially-developed presumption against technical defaults under title VII, *see, e. g., Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972), and Congress's clear mandate that title VII claimants initially resort to administrative proceedings. The object in each case is to accommodate the general remedial and humanitarian purpose of the legislation with a particular legislative preference for conciliation as a means of resolving disputes. In *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455 (5th Cir. 1970), Judge Goldberg announced what has become the standard formula for reconciling these conflicting goals: "the 'scope' of the judicial complaint is limited to the 'scope' of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Id.* at 466; *accord, Gamble v. Birmingham Southern Ry. Co.,* 514 F.2d 678 (5th Cir. 1975). The Third Circuit adopted the *Sanchez* rule in *Ostapowicz, supra,* 541 F.2d at 398–99, and has applied it most recently on facts quite similar to this case in *Hicks v. ABT Associates, Inc.,* 572 F.2d 960 (3d Cir. 1978).

■ Both parties have presented documentary evidence which they seem to believe is sufficient to permit an informed assessment of the reasonableness of the EEOC investigation. In urging a decision on the merits of the jurisdictional question, though, the parties have overlooked the plaintiff's neglect of the primary obligation to plead jurisdiction. F.R.Civ.P. 8(a)(1). Under *Hicks,* to establish jurisdiction for the sex claim the plaintiff needed to plead either that one of her charges included sex discrimination or that the EEOC reasonably

should have discovered sex discrimination based on her charges of race discrimination. Although the complaint recites in detail the filing of charges of race discrimination and retaliation, it is devoid of any such jurisdictional allegations with regard to sex. Accordingly, it must be dismissed insofar as it seeks relief under title VII for sex-based discrimination.

■ Even if the pleadings were adequate, the proffered evidence is not. In support of its motion the defendant offers the affidavit of James H. Robinson, Equal Opportunity Administrator for the University of Pennsylvania. Robinson states that to the best of his knowledge the question of sex discrimination was not raised by the EEOC, the Philadelphia Commission on Human Relations or the plaintiff during the course of the agencies' investigations. The defendant relies entirely on this affidavit as evidence of what the EEOC actually investigated, combined with the presumed regularity of official actions. But the affidavit sheds no light on the crucial question of what the plaintiff communicated to the agencies. Robinson does not state that the plaintiff failed to raise sex discrimination with the agencies and his affidavit shows no basis in personal knowledge for such a statement. *Cf.* F.R.Civ.P. 56(e). This lacuna makes Robinson's affidavit largely beside the point. As Judge Hunter wrote in *Hicks,* the issue is whether the investigation was reasonable, "irrespective of the actual content of the Commission's investigation . . . ." 572 F.2d at 966.

■ The plaintiff's evidence is no better. Attached to the memorandum in opposition to this motion is an exhibit which purports to be a copy of plaintiff's second EEOC charge. In the upper right-hand corner the box marked "sex" seems to have a mark next to it, although the copy is partially obliterated and the mark is not legible. It could, for example, be a question mark. Plaintiff's counsel now asserts—remarkably for the first time—that LeGare did in fact include "sex" in her second EEOC charge as revealed by the exhibit. This evidence, if it can be called that, is no more than an

ambiguous squiggle on a faded photocopy, lacking any sort of verification.

## II.  Equal Pay

■ Defendant argues that plaintiff has not stated an equal pay claim because she neglected to allege that she was paid less than men.  Paragraph 11(d) of the complaint charges the defendant with "[m]aintaining policies and practices with respect to, but not limited to, wages,  . . . which unlawfully operated to deny equal opportunity to women" and ¶ 12 alleges that these practices affected the plaintiff. While it is true that plaintiff does not expressly refer to male wages, as Mr. Justice Powell reminds us, "With respect to gender there are only two possible classifications." *University of California Regents v. Bakke,* 438 U.S. 265, 303, 98 S.Ct. 2733, 2755, 57 L.Ed.2d 750 (1978) (separate opinion).  To be sure, an equal pay plaintiff need not always make the implied sexual comparison explicit.  But simple gender discrimination will not make out an equal pay claim.  The Act provides relief only when males and females are paid different wages for *equal* work.[3]  *See Corning Glass Works v. Brennan,* 417 U.S. 188, 94 S.Ct. 2223, 41 L.Ed.2d 1 (1974); *Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164 (3d Cir. 1977).  In this regard the complaint does not refer even indirectly to wages paid to male workers in equivalent job classifications.  The equal pay claim will therefore be dismissed for failure to state a claim.[4]

## III.  Fourteenth Amendment

From the complaint it is uncertain whether plaintiff advances a cause of action directly under the Fourteenth Amendment or alleges denial of rights guaranteed by the Fourteenth Amendment through a cause of action created by the civil rights statutes. Defendant reads the complaint to assert a direct cause of action.  However, plaintiff's brief seems to disavow a direct action: "The Fourteenth Amendment is the underpinning of the Civil Rights Acts [sic] of 1871 and accordingly, properly is invoked. Sections 1981 and 1983 effectuate the intent of the Fourteenth Amendment and it is certainly not improper to allege it."  Plaintiff's Response Memorandum at 9.

■ If, despite this language, plaintiff actually intends to plead a direct action under the Fourteenth Amendment, the attempt must fail.  This circuit has squarely held that the existence of an "effective and substantial" federal statutory remedy precludes implication of a constitutional remedy.  *Mahone v. Waddle,* 564 F.2d 1018, 1024–25 (3d Cir. 1977), *cert. denied,* 438 U.S. 904, 98 S.Ct. 3122, 57 L.Ed.2d 1147 (1978). Plaintiff does not contend that her several statutory remedies are inadequate nor does she offer any other justification for implying a remedy "beyond the power of Congress to preclude."  *Kostka v. Hogg,* 560 F.2d 37, 44 (1st Cir. 1977).

## IV.  Civil Rights Statutes

As noted above, *supra* note 2, plaintiff concedes that her § 1985(3) claim asserts deprivation of rights guaranteed by title VII and therefore does not survive *Great American Federal Savings & Loan Ass'n v. Novotny,* 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979).  Similarly, plaintiff offers no argument in opposition to the overwhelming weight of authority holding that § 1981 does not reach sex discrimination. *See Milner v. National School of Health Technology,* 409 F.Supp. 1389, 1395 (E.D.Pa. 1976) (citing cases); B. Schlei & P. Grossman, *Employment Discrimination Law* 610 (1976).  Both the § 1985 claim and the § 1981 sex claim will be dismissed.

■ The parties do join issue over the presence of "state action" sufficient to support the § 1983 claim.  Here, as with the

---

**3.**  The Act defines equal work in some detail as "equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working   conditions,    . . ."   29   U.S.C. § 206(d)(1).

**4.**  Having dismissed this part of the action, I have no occasion to consider whether the equal pay claim is time-barred on its face.  *See* 29 U.S.C. § 255(a).

title VII claim, it is not possible to reach the merits because plaintiff has failed to meet the initial burden of pleading that the defendant acted under color of state law. *See* 28 U.S.C. § 1343(3).[5] All that the complaint reveals about the defendant is that it is a corporation organized under the laws of the Commonwealth of Pennsylvania. Complaint ¶ 5. This statement is obviously insufficient to invoke jurisdiction under § 1343(3) or to state a claim under § 1983. It follows that the § 1983 claim must be dismissed.

## V. Pleading

The Medical School asks that the entire complaint be dismissed for several reasons which may be classified as objections to inartful pleading.[6] First, the complaint is not separated into counts and, as the defendant points out, it is therefore difficult to match up plaintiff's different legal theories with the relevant facts. Second, plaintiff apparently concedes that she meant to sue the University of Pennsylvania. Finally, defendant objects that the complaint is so vague and general that it cannot form a responsive answer.

■ The Federal Rules do not require technical forms of pleading. F.R.Civ.P. 8(e). Rule 10(b) qualifies this general principle by providing that "Each claim founded upon a *separate transaction or occurrence* . . . shall be stated in a separate count . . . *whenever a separation facilitates the clear presentation of the matters set forth.*" It is possible that separation into counts would have clarified this complaint by causing the pleader to consider. more carefully the differences among his multiple legal theories. Nevertheless, Rule 10(b) is addressed to separate factual claims rather than to separate legal grounds for relief and the lack of clarity in this complaint derives from its confusion of the latter. It would not substantially aid clear presentation to require the plaintiff to separately plead the different episodes in her employment history and therefore the motion for separation will be denied. *See Plummer v. Chicago Journeyman Plumbers' Local 130*, 452 F.Supp. 1127, 1144 (N.D.Ill.1978); 2A *Moore's Federal Practice* ¶ 10.03 at 2006–07 (2d ed. 1979).

■ The defendant states in its motion that the Medical School has no independent legal existence and that therefore any judgment entered against it would be empty. Inasmuch as the University appears to be defending the action, the misnomer would seem to be primarily the plaintiff's concern. At this point in the proceedings, however, there is no evidence of record to establish the legal status of the Medical School one way or the other and the plaintiff's allegation that the defendant is a Pennsylvania corporation must be taken as true.

■ The defendant seeks finally to invoke the Third Circuit's civil rights pleading rule. This rule, which derives from *Negrich v. Hohn*, 379 F.2d 213 (3d Cir. 1967), requires that facts be pleaded specifically in civil rights complaints.[7] *See, e. g., Hall v. Pennsylvania State Police*, 570 F.2d 86, 89 (3d Cir. 1978); *Rotolo v. Borough of Charleroi*, 532 F.2d 920, 922 (3d Cir. 1976) (per

---

5. I must assume that plaintiff relies on 28 U.S.C. § 1343(3) which, like § 1983, requires action "under color of" state law. In the complaint the plaintiff cites all of § 1343 as providing jurisdiction for her § 1983 claim, ostensibly including § 1343(4) which lacks a state action requirement. Sub-section (4) confers federal jurisdiction over actions "under any Act of Congress providing for the protection of civil rights, . . . ." The Supreme Court decided last term, however, that § 1983 does not itself provide for the protection of civil rights and is therefore an inadequate basis for § 1343(4) jurisdiction. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 99 S.Ct.

1905, 60 L.Ed.2d 508 (1979). Since § 1343(4) is limited by its terms to statutory rights and the first two sub-sections speak to § 1985, *Chapman* leaves sub-section (3) as the only provision of § 1343 suited to a constitutional § 1983 claim such as LeGare's.

6. What remains of the complaint is a title VII claim for race discrimination and retaliation and a § 1981 claim for race discrimination.

7. The rule has not gone without criticism. *See* Judge Gibbons' partial concurrence and dissent from the per curiam opinion in *Rotolo v. Borough of Charleroi*, 532 F.2d 920 (3d Cir. 1976).

curiam); *Krier v. Amodio*, 441 F.Supp. 181, 183 (E.D.Pa.1977).

The complaint divides into two distinct sets of factual allegations. The first set is a fairly specific recounting of plaintiff's employment history. These allegations are more than sufficient to withstand a motion to dismiss. The second set, a broadside attack on the defendant's employment practices, is less defensible.

While it is difficult to allege systemic discrimination with as much particularity as an individual discriminatory act, plaintiff must nevertheless connect the challenged practices to herself. This is not a class action. Of the fourteen practices generally attacked by the plaintiff, five [8] relate to specific acts of discrimination against the plaintiff charged elsewhere in the complaint. The remaining nine [9] however, have no apparent relation to LeGare. We are left to wonder, for example, how the plaintiff was adversely affected by the defendant's hiring policy when, according to the complaint, she was hired twice and never rejected for a job. An adverse effect is not so directly negated for some of the other practices (*i. e.*, wages), but it is still lacking. Notwithstanding a special civil rights pleading rule, F.R.Civ.P. 8(a)(2) requires that the complaint give the defendant fair notice of the plaintiff's claim. *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). With regard to the nine practices unrelated to the plaintiff,[10] the complaint falls below the fair notice standard of Rule 8(a)(2) and will accordingly be dismissed. The challenges to the other five practices [11] will be allowed to stand, insofar as they support and amplify the specific charges made elsewhere in the complaint.

---

**8.** Transfer, promotion, sick leave, issuance of paychecks and discharges.

**9.** Seniority, job specifications, assignment, wages, recruiting, hiring, layoff, recall and affirmative action.

**10.** *See* n.9, *supra.*

**11.** *See* n.8, *supra.*

**12.** Nor should counsel be sanctioned cavalierly. The Fifth Circuit has recently held that 42 U.S.C. §§ 1988 and 2000e-5(k) do not authorize an award of attorney's fees against counsel

*VI. Attorney's Fees*

[12] The defendant moves for attorney's fees and costs on this motion under § 706(k) of title VII, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorney's Fees Awards Act, 42 U.S.C. § 1988, claiming that the complaint filed by the plaintiff was frivolous. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978); *Hughes v. Repko*, 578 F.2d 483, 489 (3d Cir. 1978). On a defendant's motion for fees, the same standard—that the action is frivolous, unreasonable or groundless—is applied under both statutes. *See Lopez v. Aransas County School District*, 570 F.2d 541, 545 (5th Cir. 1978); *Milburn v. Girard*, 455 F.Supp. 283, 285 (E.D.Pa.1978).

Assuming arguendo that the defendant is the prevailing party on this motion, its request is not unreasonable. The complaint is fairly riddled with elementary legal errors and contains a strong dose of obfuscation. Other courts have awarded defendants attorney's fees under similar circumstances, *e. g.*, where "a plaintiff proceeds on a clearly frivolous legal basis, such as suing a private corporation under § 1983 without any contentions of state action, . . . ." *Goff v. Texas Instruments, Inc.*, 429 F.Supp. 973, 976 (N.D.Tex.1977). It is, however, too early at this stage of the litigation to make informed judgments as to whether the action is groundless and whether the legal faults of counsel can be imputed to the client. Certainly a civil rights plaintiff should not lightly be penalized for her lawyer's pleading errors.[12] The defendant's motion for costs and fees will be denied.

---

under any circumstances. *Monk v. Roadway Express, Inc.*, 599 F.2d 1378, 1383 (5th Cir. 1979), *cert. granted*, —— U.S. ——, 100 S.Ct. 659, 62 L.Ed.2d 640 (1980). This holding, which is a sensible reading of those statutes, does not foreclose an award of fees as a sanction for willful violation of an attorney's obligation of good faith under F.R.Civ.P. 11. *See also, Fischer v. Buehl*, 450 F.2d 950 (3d Cir. 1971) (per curiam) (inherent disciplinary power of trial court); *Trader v. Fiat Distributors, Inc.*, 476 F.Supp. 1194, 1202 (D.Del.1979).

Plaintiff is granted leave to amend the complaint within twenty (20) days of entry of the order.