Dr. Julia Elizabeth BERRY, Plaintiff-Appellant,

v.

The BOARD OF SUPERVISORS OF L.S.U., etc., et al., Defendants-Appellees.

No. 82–3198.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1983.

Jones & Jones, Johnnie A. Jones, Baton Rouge, La., for plaintiff-appellant.

W.S. McKenzie, Mary Thornton Duhé, Baton Rouge, La., for defendants-appellees.

Before TUTTLE *, POLITZ, and GARWOOD, Circuit Judges.

GARWOOD, Circuit Judge:

This case presents the novel question of whether sex discrimination in violation of the Equal Pay Act, 29 U.S.C. § 206(d), occurs when a female, though paid the same salary as her male counterparts, is given a substantially larger volume of work. Also before us are questions as to the timeliness of the plaintiff-appellant's other claims of sex discrimination under 42 U.S.C. § 2000e ("Title VII"), and 42 U.S.C. § 1983. The district court held on a motion to dismiss that the appellant's Equal Pay Act claim was not actionable, and on motion to dismiss and motion for summary judgment, that her other claims were time barred.[1] For the reasons stated below, we affirm its holding on the section 1983 claim and remand the Equal Pay Act and Title VII claims.

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

1. On December 31, 1980 the appellees filed a motion to dismiss each of appellant Berry's claims as barred by the applicable statutes of limitations. This motion also urged that allegations of the complaint "fail to state a claim under the Equal Pay Act." On May 20, 1981, before action was taken on the motion to dismiss, the appellees also filed a motion for summary judgment, based exclusively on limitations. On June 22, 1981, appellant filed a reply to the motion for summary judgment. Both parties filed answers to interrogatories, affidavits, exhibits, and other material for the court's consideration. The motions to dismiss and for summary judgment were heard on July 15, 1981, and were granted, except as to the Equal Pay Act claim, by a December 23, 1981 ruling holding the Title VII and section 1983 claims were time barred. The ruling noted that the parties had not addressed the Equal Pay Act, and directed that briefs be filed on the issue of whether the complaint stated an Equal Pay Act claim. Following briefing as directed, the dis-

## THE FACTS

Plaintiff-appellant, Doctor Berry, a white woman, had a two-year appointment at Louisiana State University-Baton Rouge Campus ("LSU") as an associate professor of guidance counseling, which began August 20, 1975. Her salary was $17,000 per year. Berry's complaint, the defendants in which, appellees here, were the LSU Board of Supervisors and various LSU administrative and academic personnel, alleged: that before her job began she was informed that her duties would be to teach nine hours per semester and to develop a doctoral program in the guidance counselor education field; that she would also be able to pursue independent research and teach off campus during the year for LSU at a rate of one-tenth of her nine months' salary for each course taught, and during the summer, at a rate of two-ninths of this amount per course; that LSU promised to provide her with an assistant soon after she started; and that when she began work on August 20, 1975 she, unlike her male colleagues, was given the course load (on campus) of two full-time professors, amounting to eighteen to twenty-one hours per semester in nine different subjects, in addition to her other responsibilities.[2]

---

trict court on February 25, 1982 held that the complaint did not state an Equal Pay Act claim, and rendered judgment dismissing the complaint on that basis, and on the basis of the previous limitations ruling as to the Title VII and section 1983 claims.

Berry alleged willful violations, apparently seeking to invoke the three-year limitations period provided for this character of Equal Pay Act violation, as opposed to the normal two-year period. 29 U.S.C. § 255(a).

2. Berry's formal offer of employment from LSU described her position and duties as follows:

"A. Rank—Associate Professor of Education.
"B. Duties—(1) Teach courses in guidance and counseling, (2) be responsible for building the graduate programs in this area, (3) advise undergraduate and graduate students, (4) advance yourself professionally in the field through research, publications, and service, and (5) serve on departmental, college, and university committees appropriate to your rank.

LSU notified Berry on October 14, 1976 that her contract would not be renewed when it expired on May 21, 1977. LSU's stated reasons for this action were Berry's failure to meet the school's publication policy and failure to develop a curriculum in counselor education. She initiated proceedings for the internal review of her termination, which were unavailing. On October 12, 1977, Berry filed a charge of sex discrimination against LSU with the EEOC and on August 4, 1978, commenced this suit in federal district court claiming violations of the Equal Pay Act, Title VII and section 1983.

Berry alleged that because of the excessive work load assigned to her she was not able to teach off campus for extra pay as her male colleagues were, nor did she have time to pursue independent research or to develop a doctoral program. She alleged that she was given no assistant, was forced to work with inadequate funding and supplies, and was ignored when she complained. She asserted that LSU intended by this treatment to force her out of her job because of her sex. Berry alleged that her replacement, who was male, was not assigned an excessive work load and was given an assistant and the equipment, supplies, and support which she had been denied.

The district court dismissed her claim under the Equal Pay Act for failure to state a cause of action, concluding that this provision applied "only when males and females are paid different wages for equal work." It dismissed her Title VII claim because she had not filed the EEOC charge within 180 days of the "alleged unlawful employment practice," which it considered to have occurred on October 14, 1976 when she received notice that she would not be rehired. Finally, the district court dismissed her section 1983 action because it was not filed within the one-year prescriptive period which it found applicable to comparable suits in Louisiana. On appeal, Berry asserts that her allegations state a cause of

action under the Equal Pay Act and that her other claims were not time barred.

## THE LAW

### A. THE EQUAL PAY ACT CLAIM

■ Berry's complaint alleged that she replaced and assumed the work load of two full-time professors, giving her course work of eighteen to twenty-one hours per semester, while her male counterparts were assigned only the normal load of nine hours per semester. She also alleged that "[b]ecause of her exceptional and heavy work load, Plaintiff was unable to teach extramural courses for pay as her male colleagues could do and, in fact, did." The district court, focusing on the first of the allegations, concluded that "plaintiff's claim ... [was] not actionable under the Equal Pay Act" because she had not alleged that she had received unequal wages.

However, we consider that plaintiff's complaint may be construed to have raised an Equal Pay Act claim arising out of the second allegation quoted above. Berry's allegation that she carried an extra heavy regular course load while male professors, who did not, were able to teach additional courses for extra pay is susceptible of the construction that the plaintiff was paid less money for "equal" work in terms of the number of hours taught and other relevant factors. Berry made this allegation in the Title VII portion of her complaint, but she incorporated it by reference into the count alleging a violation of the Equal Pay Act. This issue also appears to have been argued to the district court, albeit somewhat obliquely and generally, in Berry's "Brief in Opposition to Defendant's Motions to Dismiss and for Summary Judgment ...," which stated:

"The question this case raises, in view of the purposes sought by Congress and the development of the case law, is:

"Whether L.S.U. by requiring and exacting Plaintiff to do twice and three

"C. Tenure: initial appointment for two (2) years.
"D. Salary: $17,000.00 for nine months. Persons who teach during the summer term

receive an additional 2/9 of their academic salary."

times as much work as her male counterparts who with apparently less professional distinction and qualifications were paid salaries equal to or considerally [*sic*] more sizable than the salary paid Plaintiff but did only an [*sic*] half, a third or even more less work on comparable jobs or in comparable positions as Plaintiff has by subterfuge successfully unearthed a mean[s] by which it can continue to discriminate against Plaintiff and others of the class based on sex in spite of 'The Equal Pay Act' by contending that such differentials in workload and hours of work per an academic year are not compensation differentials within the ambit of the Act and, therefore, not proscribed by the Act?"

In earlier portions of this trial brief, reference had been made to the fact that male associate professors were able to make extra money by teaching off campus while, because of her excessive work load, Berry had not been able to do so.[3] We take the statement in the passage quoted ·above— that male professors were paid more—to refer to the money earned by teaching off campus and to claim that such work was equal.[4]

We generally read the allegations in the plaintiff's complaint liberally, *Dussouy v. Gulf Coast Investment Corp.,* 660 F.2d 594, 604 (5th Cir.1981) ("The form of the complaint is not significant if it alleges facts upon which relief can be granted, even if it fails to categorize correctly the legal theory giving rise to the claim."); *Hargrave v. McKinney,* 413 F.2d 320, 324 (5th Cir.1969), *on remand,* 313 F.Supp. 944 (three-judge court), *vacated on other grounds,* 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971), and we normally sustain a dismissal for failure to state a claim only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Keating v. Shell Chemical Co.,* 610 F.2d 328, 333 (5th Cir.1980). Thus, reading Berry's pleadings to allege that she was paid a lower salary than her male colleagues while performing equal work, a claim under the Equal Pay Act would be stated. The district court, however, did not address this claim in its ruling, and thus we must remand it for further consideration. Of course, Berry will be required to demonstrate, *inter alia,* that the work was in the same "establishment" and was "equal work on jobs" requiring "equal skill, effort, and responsibility, and which are performed under similar working conditions"[5]; and, the claim may also be subject to the defense, among others, that the compensation differential was bona fide based on some "factor other than sex." 29 U.S.C. § 206(d)(1). We express no view of the merits of this claim or whether it will re-

---

**3.** An earlier trial brief submitted by Berry also stated:

"[M]ale professors teaching education courses at LSU were given a sufficiently light on-campus teaching load to permit them to teach extramural courses, as an overload, for extra pay; while Plaintiff was assigned an on-campus teaching overload for no extra pay, . . . ."

**4.** Berry also refers to this particular issue in her brief to this Court, arguing that LSU required her

"to teach each semester a semester-workload that consisted of more than twice the number of semester hours than that of the semester-workload required by LSU of her male counterparts who LSU permitted to teach and do 'off campus' teaching assignments for extra pay and/or who LSU paid a salary equal to or greater than the salary LSU paid the Plaintiff."

When this issue and these allegations were discussed at oral argument, counsel for LSU stated, "I did not understand that to be the basis of [Berry's] complaint, nor did I see that in the Equal Pay portion of the complaint." As noted above, these cited allegations were incorporated by reference into the Equal Pay Act count of Berry's complaint. No summary judgment "proof" was addressed to this issue, and, as noted, it was decided entirely on motion to dismiss and on the basis of the claimed facial invalidity of the complaint. *See* note 1, *supra.*

**5.** In determining whether nominally different work or jobs are "equal" or "require equal skill, effort, and responsibility, and . . . are performed under similar working conditions," we believe a court may consider, *inter alia,* whether asserted differences in any of these respects are bona fide or, on the contrary, merely devices to evade compliance with the Equal Pay Act.

quire an evidentiary hearing or can be disposed of on motion for summary judgment.

■ We now turn to the novel issue raised by Berry that the work load, *per se,* assigned her by LSU constituted a violation of the Equal Pay Act. We agree with the district court that it did not.

■ We begin our examination of this question with the text of the statute, which states:

"No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex *by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work* on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: ...." 29 U.S.C. § 206(d)(1) (emphasis added).

Berry's claim of pure "work load discrimination" is not encompassed by the literal language of this provision because she earned the same salary as her male counterparts. She was not, strictly speaking, paid "at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex ... for equal work...."

Our inquiry thus becomes whether this language in section 206 should be given a literal application. The Supreme Court has stated in this regard that "[t]he Equal Pay Act is broadly remedial, and it should be construed and applied *so as to fulfill the* underlying purposes which Congress sought to achieve." *Corning Glass Works v. Brennan,* 417 U.S. 188, 208, 94 S.Ct. 2223, 2234, 41 L.Ed.2d 1 (1974). We must also be guided, however, by established principles of

statutory construction which require that we give effect to the plain meaning of a statutory provision, especially in the absence of legislative history to indicate a contrary interpretation. *Consumer Product Safety Commission v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980); *United States v. Turkette,* 452 U.S. 576, 580, 101 S.Ct. 2524, 2527, 69 L.Ed.2d 246 (1981); *Aaron v. Securities and Exchange Commission,* 446 U.S. 680, 697, 100 S.Ct. 1945, 1955, 64 L.Ed.2d 611 (1980). Thus, we must examine the "underlying purposes which Congress sought to achieve" to determine whether they comport with the plain meaning of this provision.

The legislative history of the Equal Pay Act does not directly address the question of "work load discrimination," but the structure of the Act and the statements made in Congress at the time of its passage support our conclusion that claims of pure "work load discrimination" *as such* are not encompassed by the statute. As for its structure, the Equal Pay Act was made part of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* under which it has been administered and enforced. The focus of the FLSA is on *wages* —minimum hourly rates and overtime pay—and not on working conditions or assignments. *See* sections 206 and 207.[6] Even within this area of regulation, the FLSA has limited coverage. In 1963, when the Equal Pay Act was passed, employers in motel, hotel, laundry, outside sales, and other areas were excluded from its reach. *See* section 213 (1965 ed.). Onto this regulatory framework, the equal pay provisions were grafted. The Equal Pay Act's precise language indicates that its focus, like that of the FLSA generally, is also wages—specifically, the prevention of gender-discriminatory wage rates. It was included in the FLSA provision on minimum wages, section 206, and by its terms it prohibits covered employers only from "*paying wages* to employees ... *at a rate less than the rate at which he pays wages* to employees of the

---

**6.** The child labor provisions of the FLSA (*see* 29 U.S.C. §§ 203(*l*), 212) can perhaps be regarded as an exception to this, but are plainly irrelevant for present purposes. So far as adults are concerned, the FLSA's focus is plainly on wages as such.

opposite sex ... for equal work...." 29 U.S.C. § 206 (emphasis added).

An examination of the floor debates supports the conclusion that the Equal Pay Act was aimed only at discriminatory wage rates. As Senator McNamara, in his introduction of the Bill before the Senate stated, "This Bill, S. 1409, establishes the additional protection [to the others contained in the FLSA] that a worker cannot be paid a discriminatory wage rate because of his or her sex." 109 Cong.Rec. 8914 (1963). The House debates as well reveal Congress' intention that the Equal Pay Act apply only when wages were unequal,[7] as does the "Declaration of Purpose" accompanying the Bill in the House, which targeted the "existence of ... wage differentials based on sex" as the evil at which the legislation was directed. *Id.* at 9213. The Committee Reports on the equal pay Bills from both the House and the Senate confirm this intention. The House Report, clearly contemplating application of the provision only where wages were unequal, states that section 206 "declares that wage differentials based solely on the sex of the employee are an unfair labor standard. The lower wage rate must be increased to the level of the higher." H.Rep. No. 309, 88th Cong., 1st Sess., *reprinted in* 1963 U.S.Code Cong. & Ad.News 687, 688. The Senate Report likewise states:

"The wage structure of all too many segments of American industry has been based on an ancient but outmoded belief that a man, because of his role in society, should be paid more than a woman even though his duties are the same. This Bill would provide, in effect, that such an outmoded belief can no longer be implemented and that equal work will be rewarded by equal wages." S.Rep. No. 176, 88th Cong. 1st Sess. 1 (1963), *reprinted in* 109 Cong.Rec. 8914 (1963).

In more general terms, the House debates reveal that the Act was not intended as a comprehensive attack on sex discrimination in employment.[8] Rather, it was regarded as a limited first step aimed at a particularly blatant and egregious form of sex discrimination—paying women lower wages than men for performing the same work.[9] Thus, we conclude from our review of the legislative history that the underlying purposes of the Equal Pay Act did not include the prevention of "work load discrimination" as such.

Case law on the Equal Pay Act supports the view that it is limited to claims of unequal wages and that it was not intended to reach all of the economic effects of sex discrimination in the workplace. The Supreme Court's recent decision in *County of*

7. Supporters of the Bill repeatedly referred to the problem of unequal wages: "The Bill prohibits the payment of discriminatory wage rates which are based on sex...." 109 Cong. Rec. 9195 (1963) (Rep. Powell); *see also id.* at 9196 (Rep. Frelinghuysen) ("The only thing prohibited is a difference in pay that is based solely on sex."); at 9196 (Rep. Thompson) ("It only applies ... where there is a wage differential based solely on sex."); at 9204 (Rep. Sickles); at 9211 (Rep. Ryan); and at 9213 (Rep. Matsunaga).

In instances where Representatives gave examples of the operation of the Act, "work load discrimination" was never mentioned. *See id.* at 9196 (examples given by Rep. Frelinghuysen).

8. The primary reason that the Act was not considered to be comprehensive was its limited employer coverage, which was based on that of the FLSA. *See* 109 Cong.Rec. 9193 (May 23, 1963) (remarks by Rep. St. George and Rep. Frances P. Bolton). Statements by other of the

Act's supporters, however, suggested that it was not a comprehensive attack on all forms of sex discrimination in the employment areas which were covered. *See* 109 Cong.Rec. 9196 (May 23, 1963) (remarks of Rep. Frelinghuysen —"[W]e can expect that the administration of the equal pay concept, while fair and effective, will not be excessive nor excessively wide ranging."); at 9199 (remarks of Rep. Dwyer—"There are a number of weaknesses in this bill which I believe unwisely limit the scope of its application and unnecessarily encumber its enforcement."); at 9200 (remarks of Rep. Dent—"I think that this legislation falls very short of doing the job that has to be done in this area of employment.").

9. *See* the remarks of Rep. St. George, 109 Cong.Rec. 9193 (1963) ("[I]n the meantime, we are going to have these bills which will help, which will do a little, which will get a foot in the door, ...."); and Rep. Sullivan, *id.* at 9205 ("It does not go far enough, in my opinion, but, as far as it goes, it is a good bill.").

*Washington v. Gunther,* 452 U.S. 161, 101 S.Ct. 2242, 68 L.Ed.2d 751 (1981), is instructive in this regard. In *Gunther,* female prison guards sued Washington County under Title VII for wage discrimination. They claimed that part of the pay differential between their jobs and those of male guards was attributable to intentional sex discrimination even if the two jobs were not substantially equal. The Equal Pay Act did not apply to municipal employees at that time, so its provisions were not directly in issue. The question before the Court, however, was whether claims under Title VII were limited by 42 U.S.C. § 2000e–2(h), the Bennett Amendment, to those which were generally cognizable under the Equal Pay Act. The Court held that although the Equal Pay Act was "restricted to cases involving 'equal work ...,'" Title VII was not so limited. *Id.* at 168, 101 S.Ct. at 2247.

Thus, it is apparent that the Equal Pay Act would not have recognized the claims of the female prison guards in *Gunther* because their work was admittedly not equal to that of the male guards. *Accord, Orahood v. Board of Trustees,* 645 F.2d 651, 654 n. 3 (8th Cir.1981); *Pearce v. Wichita County,* 590 F.2d 128, 133 (5th Cir.1979). The equal work aspect of the Equal Pay Act claim must thus be proven as part of a plaintiff's *prima facie* case. We conclude that proof of unequal pay is *also* part of a plaintiff's *prima facie* case, and that without both there is no cause of action under the Equal Pay Act.

Other cases interpreting the Equal Pay Act, although not addressing the particular question before us, are consistent with the requirement of unequal pay as an element of its *prima facie* case. In *Corning Glass Works v. Brennan, supra,* the Supreme Court stated that "[i]n order to make out a case under the Act, the [plaintiff] must show that an employer pays *different wages* to employees of opposite sexes 'for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.'" 417 U.S. at 195, 94 S.Ct. at 2228 (emphasis added). The Third Circuit, quoting this language, reiterated the element of unequal pay as essential to a *prima facie* case under the Equal Pay Act. *Angelo v. Bacharach Instrument Co.,* 555 F.2d 1164, 1171 (3d Cir.1977). More recently, a district court relying on both *Corning* and *Angelo,* rejected an Equal Pay Act claim which lacked allegations of unequal wages paid to male workers in equivalent job classifications. The court noted that "[t]he Act provides relief only when males and females are paid different wages for *equal* work." *Legare v. University of Pennsylvania Medical School,* 488 F.Supp. 1250, 1255 (E.D.Pa.1980) (footnote omitted). *See also Neale v. Dillon,* 534 F.Supp. 1381, 1385 (E.D.N.Y.1982); *Vuyanich v. Republic National Bank of Dallas,* 505 F.Supp. 224, 281 (N.D.Tex.1980) ("The only wage discrimination based on sex proscribed by the Equal Pay Act is that of unequal compensation for *equal* work."). These opinions indicate that the allegation of unequal pay is a necessary element of a section 206 claim.

Berry agrees that her claim of "work load discrimination" does not fit within the literal language of the statute but argues that restricting section 206(d) would frustrate its purpose since it would allow an employer to discriminate against a female by requiring her to do more work than a male for no greater pay. As shown, however, the Equal Pay Act was regarded from its inception as a limited measure aimed at preventing women from being paid less than men for the same work. It was enacted as a "first step" in eliminating sex discrimination in employment. Thus, the Equal Pay Act is not "frustrated" by the existence of pure "work load discrimination" which it was never meant to encompass.[10]

10. We do not suggest that where the employer's compensation system in a given establishment is in fact based or calculated on a time-worked or work-produced basis, that the Equal Pay Act's equal rate of pay requirement can be evaded by labeling the system as one of monthly or annual salary so as to mask gender-based discrimination in compensation. However, we do not understand Berry to have alleged or inferred that LSU's use of an academic year or semester salary system, in lieu of a piecework or hourly wage system, was *itself* other than bona fide or that such a system has any inherent gender-discriminatory characteristics or

## B. THE TITLE VII CLAIM

■ The district court dismissed Berry's Title VII claim for failure to file a timely charge with the EEOC. We are unable to entirely affirm this dismissal. A Title VII plaintiff must file a charge of discrimination with the EEOC within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e–5(d). The courts, however, have frequently utilized the theory of a "continuing violation" in applying this limitation. This theory, the precise contours and theoretical bases of which are at best unclear,[11] relieves a plaintiff who makes such a claim from the burden of proving that the entire violation occurred within the actionable period. To establish a continuing violation for these purposes it is said that the plaintiff must show "a series of related acts, one or more of which falls within the 180 day period. . . ." B. Schlei & P. Grossman, *Employment Discrimination Law*, 232 (Supp.1979); *Clark v. Olinkraft, Inc.*, 556 F.2d 1219, 1223 (5th Cir.1977), *cert. denied*, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); *Scarlett v. Seaboard Coast Line Railroad Co.*, 676 F.2d 1043, 1049 (5th Cir.1982). *See also McKenzie v. Sawyer*, 684 F.2d 62, 72 (D.C.Cir.1982).

Where the plaintiff has alleged a continuing discriminatory policy, courts have differed over whether the existence of the policy itself constitutes a continuing violation, making a suit timely if the policy remains in effect during the actionable period, or whether there must be some actual application of it to the plaintiff within the period. *Compare McKenzie v. Sawyer, supra*, 684 F.2d at 72 *and Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir. 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 302, 74 L.Ed.2d 283 (1983) *with Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256, 274 (2d Cir.1981), *cert. denied*, 455 U.S. 988, 102 S.Ct. 1611, 71 L.Ed.2d 847 (1982) *and Acha v. Beame*, 570 F.2d 57, 65 (2d Cir.1978).

■ The plaintiff, however, may not employ the continuing violation theory "to resurrect claims about discrimination concluded in the past, even though its effects persist. *Delaware State College v. Ricks*, 449 U.S. 250, 257, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *United Airlines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977)." *McKenzie v. Sawyer, supra*, 684 F.2d at 72. *Accord Bronze Shields, Inc. v. New Jersey Department of Civil Service*, 667 F.2d 1074, 1083 (3d Cir. 1981), *cert. denied*, 458 U.S. 1122, 102 S.Ct. 3510, 73 L.Ed.2d 1384 (1982); *Williams v. Owens-Illinois, Inc., supra*, 665 F.2d at 924, *Goldman v. Sears, Roebuck & Co.*, 607 F.2d 1014, 1018 (1st Cir.1979), *cert. denied*, 455 U.S. 929, 100 S.Ct. 1317, 63 L.Ed.2d 762 (1980).

■ The theory may also be relevant to a plaintiff's remedy,[12] for it has been stated

---

was not typical or reasonable for that character of employment.

Berry is not without a remedy for the pure "work load discrimination" which she alleges, for, as discussed below, such claim is cognizable under Title VII.

11. This Court has noted, "Case law on the subject of continuing violations has been aptly described as 'inconsistent and confusing' . . . ." *Dumas v. Town of Mount Vernon*, 612 F.2d 974, 977 (5th Cir.1980); *Scarlett v. Seaboard Coast Line R. Co.*, 676 F.2d 1043, 1049 (5th Cir.1982). Though courts have seldom attempted to delve into its origins or theoretical underpinnings, at least one court considers the theory, or certain of its aspects, to be analogous to the concept of a continuing trespass in tort law. *See Thompson v. Sawyer*, 678 F.2d 257, 290 (D.C.Cir.1982) (citing Restatement (Second) of Torts § 899(d)). While this analogy may lend support to the concept of awarding recovery for damages suffered within the "limitations" period on account of acts originating outside the period, it does not tend to support entitlement to recovery for damages suffered without the period, nor does it appear to have been employed to distinguish between those violations that are, and those that are not, "continuing."

12. This Court held in *United States v. Georgia Power Co.*, 474 F.2d 906, 922 (5th Cir.1973), that the "limitations period" applicable to an award of back pay relief was not the 180-day period (90 days at that time) in which an EEOC charge must be brought. It held that Title VII was silent on the proper period and looked to the analogous state statute of limitations to determine what length of time was appropriate. As noted below, Congress amended Title VII in 1972 to limit back pay awards to a period of two years before the filing of a charge with the EEOC. 42 U.S.C. § 2000e–5(g).

that "[o]nce having shown discrimination continuing into the actionable period, ... the plaintiffs may also recover for portions of the persistent process of illegal discrimination that antedated the limitations period. *Laffey v. Northwest Airlines*, 567 F.2d 429, 472 (D.C.Cir.1976)." *McKenzie v. Sawyer, supra*, 684 F.2d at 72 (footnote omitted). *Accord Crawford v. Western Electric Co.*, 614 F.2d 1300, 1309 (5th Cir.1980); *Thompson v. Sawyer*, 678 F.2d 257, 290–91 (D.C.Cir.1982). Such recovery, however, has been limited to a period of two years prior to the filing of a charge with the EEOC. 42 U.S.C. § 2000e–5(g). *See Crawford v. Western Electric Co., supra*, 614 F.2d at 1309.

■ The district court in the case before us held that the "alleged unlawful employment practice" occurred in October 1976, when Berry was informed that her contract would not be renewed. Since she went to the EEOC in October 1977, roughly a year later, her claim was not timely. The court correctly construed the discharge, *per se*, as not constituting a continuing violation which would have extended the time for filing. It was a discrete act of discrimination, and Berry was obliged to seek relief from it within the statutory 180-day period. *Delaware State College v. Ricks*, 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *Chardon v. Fernandez*, 454 U.S. 6, 102 S.Ct. 28, 70 L.Ed.2d 6 (1981). Nor could the work load and salary discrimination alleged by Berry following LSU's decision not to rehire her, which are discussed below, transform this action into a continuing violation. In an analogous situation, *Equal Opportunity Employment Commission v. Akron National Bank*, 497 F.Supp. 733, 742 (N.D.Ohio 1980) held that an initial alleged discriminatory assignment was not part of subsequent alleged salary discrimination and failure to promote. Likewise, opinions in cases where an employee is discharged without the actionable period but is injured by his former employer's discriminatory references within the period, indicate that the latter acts are not a continuation of the initial discharge. *Shehadeh v. Chesapeake & Potomac Telephone Co.*, 595 F.2d 711, 720 (D.C.Cir.1978); *Tarvesian v. Carr Division of TRW, Inc.*, 407 F.Supp. 336, 340 (D.Mass.1976). *But see EEOC v. United States Fidelity & Guaranty Co.*, 414 F.Supp. 227, 233 (D.Md.1976). Similarly, LSU's failure to rehire was a discrete act which was not part of a continuing violation.

Berry, however, also alleged that the discriminatory work load, which LSU assigned to her, constituted a continuing violation in and of itself. As heretofore noted, this claim may be construed as an unequal pay for "equal work" claim, as Berry was paid less than her male colleagues were, they being paid for their off-campus teaching and she not being paid for her additional, allegedly equal, teaching (which prevented her from performing off-campus teaching). This situation continued throughout her final semester of teaching, part of which fell within 180 days of her filing a charge with the EEOC.[13] To the extent that Berry alleges and demonstrates salary discrimination in the form of unequal pay for true "equal work," her claim, as previously discussed, is covered by the Equal Pay Act under which the limitations period extends back to August 1976, or, if the violation were willful, to August 1975, which is when her employment began. *See* 29 U.S.C. § 255(a). There was no summary judgment adjudication or conclusive demonstration of a lack of the alleged willfulness. We also observe that there are a number of decisions in which salary discrimination has been found to constitute a continuing violation of Title VII, usually on the rationale that each discriminatory paycheck violates the Act. *Jenkins v. Home Insurance Co.*, 635 F.2d 310, 312 (4th Cir.1980); *Hall v. Ledex, Inc.*, 669 F.2d 397, 398 (6th Cir.1982); *Satz v. ITT Financial Corp.*, 619 F.2d 738, 743–44 (8th Cir.1980); *Fisher v. Dillard*

13. Berry filed her charge with the EEOC on October 12, 1977. She, therefore, must allege a violation of Title VII within 180 days of that date, or about April 12, 1977. Berry's employment did not end until May 21, 1977, which meant that there was a period of somewhat more than one month within the 180 days in which she suffered the alleged work load and salary discrimination.

*University,* 499 F.Supp. 525, 528 (E.D.La. 1980). But not every case of unequal salary resulting from discrimination presents a "continuing violation" situation. *See United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977) (past discriminatory act having "a continuing impact on her pay" not for that reason a "continuing violation"). However, we do not understand Berry to be making any complaints of discrimination in *salary, as such,* other than those we have referenced as potential Equal Pay Act, unequal pay for "equal work," claims. Thus, in any event it is clear that the unequal salary for "equal work" claim could not properly have been dismissed on limitations grounds, regardless of whether or not the "continuing violation" theory is applicable, for such claim was potentially actionable, and not shown to be time barred, under the Equal Pay Act.

To the extent that Berry's Title VII claim is not that she suffered salary discrimination of the Equal Pay Act variety, but "work load discrimination" *per se,* which we have held not to be actionable under the Equal Pay Act, we are unable to determine whether she has made out a continuing violation. *Cf. Held v. Gulf Oil Co.,* 684 F.2d 427 (6th Cir.1982) (discriminatory work load held to be an element of the continuing violation found by the court). This issue, although raised by Berry, was not focused on by the parties or the court, leaving the record devoid of potentially important facts and legal argument on the point. Thus, we also remand the question of whether the "work load discrimination" of which Berry complains constituted a continuing violation extending into the 180-day period.[14] *See Gonzalez v. Firestone Tire & Rubber Co.,* 610 F.2d 241, 249 (5th Cir.1980) (remand for finding on existence of continuing violation).

Courts have not formulated a clear standard for determining when alleged discriminatory acts are related closely enough to constitute a continuing violation and when they are merely discrete, isolated, and completed acts which must be regarded as individual violations. *See Tarvesian v. Carr Division of TRW, Inc., supra,* 407 F.Supp. at 339–40; *Nelson v. Williams,* 25 F.E.P. 1214, 1215 (D.D.C.1981) ("In order to support a finding of a continuous violation, [plaintiff] must do more than show a series of unrelated and isolated instances of discrimination. She must prove a series of continuous violations constituting an organized scheme leading to a present violation."). This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.,* a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?[15] As noted, the particular

---

14. Assuming, without deciding, that Berry might establish a case of intentional sex discrimination by unequal salary for "equal work" and yet make out only an ordinary, but not a willful, violation of the Equal Pay Act, so that limitations would bar recovery under the Equal Pay Act for salary which should have been paid prior to August 1976 (two years prior to suit), it is then possible that the "continuing violation" theory would be relevant to Berry's ultimate recoverable lost salary under the unequal salary for "equal work" claim in that it might allow salary recovery (pursuant to Title VII) under such claim all the way back to October 1975

(two years prior to her EEOC complaint). Should that situation present itself to the district court on remand, it should also address the application of the "continuing violation" theory to the unequal salary for "equal work" claim under Title VII.

15. *Cf. Goldman v. Sears, Roebuck & Co., supra,* 607 F.2d at 1018–19 (discriminatory transfer from one department to another; refusals of requests to transfer back do not convert this to a continuing violation absent allegations that such refusals were themselves motivated by a discriminatory animus).

context of individual employment situations requires a fact-specific inquiry by a trial judge which cannot be easily reduced to a formula. We feel, however, that consideration of the above factors will generally be appropriate, and we leave their application here, as well as whether trial on the merits is required for their resolution, in the first instance to the district court.

## C. THE SECTION 1983 CLAIM

■ Berry's complaint also made a claim based on 42 U.S.C. § 1983, which the district court held was time barred. We agree. Relying on *Lavellee v. Listi,* 611 F.2d 1129, 1130 (5th Cir.1980), the district court held that the prescriptive period applicable to section 1983 actions in Louisiana was one year. This period was "borrowed" from the one-year limitation applicable to claims based on "offenses and quasi-offenses" in Louisiana. La.Civ.Code art. 3536. Since Berry's suit was filed on August 4, 1978, over a year after both her nonreappointment notice and her final termination date, the district court held that it was barred.

It rejected Berry's argument that she was unaware of the alleged discriminatory practices against her until August 24, 1977, the date on which she learned that her replacement was male. The court found that Berry was aware of the "injury which [was] the basis of the action" by January 16, 1977, when she wrote a letter to the Chancellor of LSU, stating that there was "some history in the College of Education of discrimination against women," and that "I personally feel that the time is gone when you can treat professional women this way and get away with it. I thought that the whole civil rights movement put an end to that, but apparently it did not at L.S.U." And, as noted, Berry complained of being

assigned twice the work load of her male counterparts ever since August 1975.

In *Lavellee v. Listi, supra,* this Circuit held that a cause of action under section 1983 accrues when "the plaintiff is, or should be, aware of both the injury and its connection with the acts of the defendant." 611 F.2d at 1131. We agree with the district court that this letter reveals that Berry, as a matter of law, was aware of the alleged discriminatory practices on January 16, 1977. Without question, she considered the cause of the alleged discrimination to be LSU. Since her suit was not filed within one year after the accrual of her cause of action, it was barred.

Berry asserted for the first time at oral argument that the Louisiana one-year prescriptive period applicable to section 1983 actions sounding in tort was not appropriate in her case because her action was based on breach of contract. Without citation to any authority, she asserted that such suits in Louisiana were governed by a ten-year prescriptive period.[16] We decline to consider this argument since Berry failed to raise it in the trial court or even in her brief on appeal, *see Melendez v. Singer-Friden Corp.,* 529 F.2d 321, 324 (10th Cir.1976); *United States v. Masonry Contractors Association of Memphis, Inc.,* 497 F.2d 871, 877 (6th Cir.1974), and we thus affirm the district court's dismissal of her section 1983 claim.

## CONCLUSION

We affirm the district court's rulings that "work load discrimination" *per se* is not actionable under the Equal Pay Act and that Berry's section 1983 claim is time barred; we remand to the district court, for further proceedings consistent herewith, Berry's Equal Pay Act (and Title VII) claim

---

**16.** Presumably, Berry relies on *McCoy v. Tangipahoa Parish School Board,* 308 So.2d 382, 386 (La.App.), *writ denied,* 310 So.2d 856 (1975), for this assertion. In that case a school principal's claim for back pay was held to be governed by the ten-year prescriptive period in article 3544, La.Civ.Code, which applies to all personal actions not otherwise provided for by the Code. We note that Berry's argument

would in any event apparently be foreclosed by our decision in *Jones v. Orleans Parish School,* 688 F.2d 342, 344 (5th Cir.1982) (on rehearing), *cert. denied,* —— U.S. ——, 103 S.Ct. 2420, 77 L.Ed.2d 1310 (1983), where we rejected the application of the three-year limitation period in article 3538, La.Civ.Code, in favor of the one-year period in a teacher's section 1983 claim.

that she was paid less than her male colleagues for "equal work," and her Title VII claim for the alleged "work load discrimination." [17]

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

TUTTLE, Circuit Judge, concurring in part and dissenting in part:

I concur in the disposition of this case, but I must respectfully dissent from that part of the opinion which states that the allegations of the complaint did not state a *per se* violation of the Equal Pay Act.

The complaint alleges that Dr. Berry was required to do twice as much work as her male counterparts for the same amount of pay. To say, as does the majority, that for an employee to pay a male and female employee the same salary and to require that the female do twice as much work for the salary is not to pay "wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work" is, as it seems to me, to misread completely not only the purpose but also the language of the statute. To require twice as much work for a given dollar cannot satisfy the requirement of the statute that an employer pay the same rate of pay for equal work.

I would therefore hold that Dr. Berry's complaint alleged a claim under the Equal Pay Act without the necessity for a remand to the trial court to consider whether she alleged a claim by stating that her extra workload made it impossible for her to earn outside compensation which was permitted to her male counterparts.

In all events, I concur in the disposition that is made by the Court in remanding the case for further proceedings.

---

**17.** In the light of our remand, we further observe that Berry's amended complaint, filed in September 1978, contains class action allegations which have not been addressed by the district court or by this Court.