**Dr. Julia Elizabeth BERRY,
Plaintiff-Appellant,**

v.

**The BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY and Agriculture and Mechanical College, Dr. Martin D. Woodlin, et al., Defendants-Appellees.**

No. 85–4217
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 5, 1986.
Rehearing and Rehearing En Banc
Denied April 3, 1986.

Johnnie A. Jones, Baton Rouge, La., for plaintiff-appellant.

Taylor, Porter, Brooks & Phillips, W.S. McKenzie, Mary Thornton Duhé, Baton Rouge, La., for defendants-appellees.

Before JOHNSON, JOLLY, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

Dr. Julia Elizabeth Berry brought suit against officials of Louisiana State University (LSU) alleging sex-based discrimination in violation of 42 U.S.C. § 2000e (Title VII), 29 U.S.C. § 206(d) (the Equal Pay Act), and 42 U.S.C. § 1983. The district court granted summary judgment in favor of LSU. On appeal, this Court affirmed in part and remanded in part, *Berry v. Board of Supervisors*, 715 F.2d 971 (5th Cir.1983). The Court directed the district court to consider on remand Berry's Title VII and Equal Pay Act claims. After a partial summary judgment on the Title VII claim and a trial on the merits of the Equal Pay Act claim, the district court entered judgment for the defendants. Finding that plaintiff Berry fails to establish that the district court erred in following this Court's mandate, we affirm.

## I. BACKGROUND [1]

Berry was hired as an associate professor of guidance counseling in the Department of Education at LSU. Her initial appointment, at a salary of $17,000 per year, was for two academic years from August 20, 1975, to May 21, 1977. On October 14, 1976, Berry was notified that her contract would not be renewed when it expired the next semester.[2] Berry initiated internal review proceedings of her termination which were unavailing. On October 12, 1977, Berry filed a charge of sex discrimination against LSU with the Equal

Employment Opportunity Commission (EEOC), and on August 4, 1978, she commenced her federal action.

Berry's complaint alleged, *inter alia*, that she was assigned an excessive workload of eighteen to twenty-one hours per semester in addition to her responsibilities of research and development of a doctoral program in the field of guidance counselor education. Berry acknowledged that her base salary was equal to that of her male counterparts but alleged that her excessive workload prevented her from teaching extramural courses for extra pay, as did at least some of her colleagues who taught graduate students. She also alleged that she was not given adequate assistance in her work and that her successor, Dr. Thomas Hosie, was given such assistance.

Prior to the first appeal, the district court dismissed Berry's claim under the Equal Pay Act for failure to state a cause of action, concluding that the Act applied "only when males and females are paid different wages for equal work." The district court dismissed her Title VII claim because she failed to file her charge within 180 days of the "alleged unlawful employment practice," *see* 42 U.S.C. § 2000e–5(d), which the district court considered to have occurred on October 14, 1976, the date Berry received notice that she would not be rehired. The trial court also found Berry's section 1983 action barred by the Louisiana prescription statutes.

On appeal, this Court affirmed in part and reversed and remanded in part. On the Equal Pay Act claim, the Court discerned that Berry's arguments could be broken into two areas: (1) that she was assigned an excessive workload compared to her male counterparts; and (2) that her excessive workload prevented her from teaching extramural courses for extra pay. The court found that the second stated a

1. This Court supplements the facts stated in the court's opinion on the first appeal.

2. In her original complaint, Dr. Berry contended that her termination at LSU violated Title VII

and § 1983. The Court found Berry's assertion regarding her termination time-barred under both statutes. *See Berry*, 715 F.2d at 980, 982.

cause of action under the Equal Pay Act. The Court noted,

> Berry's allegation that she carried an extra heavy regular course load while male professors, who did not, were able to teach additional courses for extra pay is susceptible of the construction that the plaintiff was paid less money for "equal" work in terms of the number of hours taught and other relevant factors.

715 F.2d at 974. The Court emphasized that on remand Berry must meet the statutory requirements of proving her claim under the Equal Pay Act. *Id.* at 975.

As to Berry's Title VII claim, the Court agreed with the district court's holding that Berry's discharge was time-barred since it "was a discrete act of discrimination, and Berry was obliged to seek relief from it within the statutory 180-day period." *Id.* at 980. The Court, however, noted that Berry's claim of workload discrimination might have been a "continuing violation" which extended into the actionable 180 day period. The Court therefore conducted an exhaustive study of the theory of "continuing violation," suggested three factors that courts should consider, and remanded the case to the district court to consider these factors in determining whether Berry's charge of workload discrimination was a continuing violation. The Court explicitly stated that the trial court should determine, in the first instance, whether summary judgment was appropriate.[3]

On remand, the district court granted partial summary judgment on the Title VII claim, holding that Berry's claim of discrimination of a heavier instructional load did not fall within the 180 day period preceding the filing of her claim with the EEOC. The district court then proceeded to hear Berry's Equal Pay Act claim. After a three day trial, the district court

entered Findings of Fact and Conclusions of Law that Berry's work assignment was not comparable under Equal Pay Act standards with that of the five male professors with whom she sought comparison. The plaintiff timely appealed from the district court's judgment.[4]

## II. THE MERITS.

We first examine Berry's claim that the district court erred in holding that her Title VII claim of discrimination of a heavier instructional workload was time-barred for failure to file a charge of discrimination with the EEOC within 180 days of the "alleged unlawful employment practice." 42 U.S.C. § 2000e–5(d). As the Court noted on the first appeal, 715 F.2d at 980 n. 13, Berry filed her charge with the EEOC on October 12, 1977. Berry, therefore, was required to allege a violation of Title VII within 180 days preceding that date, or approximately April 12, 1977. The Court noted that since Berry's work at LSU continued until May 21, 1977, Berry might be able to establish a "continuing violation" that reached into the actionable period between April 12 and May 21 and which would therefore comply with the 180 day filing requirement.

In order to guide the district court and the parties on remand, the Court undertook a careful study of instances in which the theory of a continuing violation "relieves a plaintiff ... from the burden of proving that the entire violation occurred within the actionable period." 715 F.2d at 979. The Court noted that mere continuity in employment with the defendant was insufficient to relieve the plaintiff's burden. *See United Airlines, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977); *Delaware State College v. Ricks,* 449 U.S. 250, 257, 101 S.Ct. 498, 504,

---

**3.** The Court also held that the Louisiana prescription statute of one year for "offenses and quasi-offenses" applied to Berry's claim under § 1983. The Court held that, based on a letter that Berry wrote alleging sex discrimination on January 16, 1977, Berry was aware of the alleged discriminatory practices. The Court held that her § 1983 action accrued on this date and

that her § 1983 claim, filed over a year later, was time-barred.

**4.** The plaintiff also sought to maintain her suit as a class action. We affirm the district court's denial of this motion for the reasons stated in the district court's memorandum.

66 L.Ed.2d 431 (1980). Rather, the Court discussed the difficulty in distinguishing related acts of discrimination constituting a continuing violation and discrete acts "which must be regarded as individual violations." *Berry*, 715 F.2d at 981. The Court then suggested the approach to be followed by the trial court on remand:

This inquiry, of necessity, turns on the facts and context of each particular case. Relevant to the determination are the following three factors, which we discuss, but by no means consider to be exhaustive. The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (*e.g.*, a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the degree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate?

*Id.* at 981 (footnote omitted).

On remand, the district court held that Berry's workload assignment for the spring semester of 1977 did not constitute a continuing violation. Relying on affidavits submitted by defendants, the district court noted that faculty work assignments were finalized at the beginning of the semester in January 1977:

The allegedly discriminatory act, the assignment of work responsibility, occurred in January of 1977 when assignment of the spring semester duties was finalized. No changes were made thereafter. What allegedly followed thereafter and about which plaintiff complains (deprivation of income, etc.) were results and consequences of the alleged discriminatory act, not new discriminatory acts.

The trial court then applied the three factors suggested on the first appeal. The trial court noted that faculty work assignments are more in the nature of an "isolated work assignment" since they are made at the beginning of a semester. The trial court also noted that such assignments are "permanent" in that "the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate." *Berry*, 715 F.2d at 981. The district court, therefore, held that Berry failed to meet the 180 day filing requirement under Title VII on her workload discrimination claim.

On appeal, counsel for the plaintiff does not attempt to address how plaintiff's argument of a continuing violation of workload discrimination fits within the *Berry* framework. Rather, plaintiff draws on generalities from previous continuing violation cases without addressing this Court's concerns explicitly stated in the prior appeal. Nor does plaintiff attempt to dispute the district court's holding that the work assignments, were finalized at the beginning of the 1977 spring semester. Instead, plaintiff attempts five distinctions which plaintiff feels establishes a continuing violation extending into the actionable period of April 15 to May 21, 1977:

(1) No release time from instructional responsibilities for program development, scholarly activities and service projects;

(2) Inability to accept extramural teaching;

(3) Failure to receive paychecks for extramural teaching;

(4) Advisement of undergraduate students in late April 1977; and

(5) Replacement of plaintiff by a male on August 24, 1977.

Without any explanation as to their relevance to the *Berry* factors, we see no substantial merit to these arguments. The first three relate solely to Berry's work assignment, which was finalized in January 1977 before the actionable period. The fourth, although possibly a source of a continuing violation, fails in that the record establishes that such assignments of aca-

demic advisement were routine. Finally, plaintiff's assertion that she was unaware of LSU's discriminatory conduct until she learned she was replaced by Dr. Hosie is belied by this Court's prior holding that she was aware of the alleged discrimination as early as January 16, 1977. *Berry,* 715 F.2d at 982. In sum, plaintiff's failure to address the mandate of this Court dooms its Title VII argument on this second appeal.

Turning to Berry's Equal Pay Act claim, the Court on the first appeal noted that plaintiff stated a claim insofar as she alleged that "[b]ecause of her exceptional and heavy work load, Plaintiff was unable to teach extramural courses for pay as her male colleagues could do and, in fact, did." *Id.* at 974. The Court emphasized that "Berry will be required to demonstrate [on remand], *inter alia,* that the work was in the same 'establishment' and was 'equal work on jobs' requiring 'equal skill, effort, and responsibility, and which are performed under similar working conditions....'" *Id.* at 975 (citing 29 U.S.C. § 206(d)(1) (footnote omitted)).

On remand the district court noted that the plaintiff sought to compare herself with five of her colleagues to show that her heavier instructional workload prevented her from teaching extramural courses. The district court also found that, unlike Berry, these five "comparators" were assigned primarily administrative duties. This finding of fact is subject to the clearly erroneous standard. *See Hodgson v. First Victoria National Bank,* 446 F.2d 47, 48 (5th Cir.1971) (per curiam); *Marshall v. Dallas Independent School District,* 605 F.2d 191, 195 (5th Cir.1979). *See also Spaulding v. University of Washington,* 740 F.2d 686, 697 (9th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 511, 83 L.Ed.2d 401 (1984). Once again, plaintiff does not present an argument specifying how this finding was so erroneous. Nevertheless, the Court has examined the record in detail as to the work assigned Berry and her colleagues and finds no such error. *See Spaulding,* 740 F.2d at 698 (plaintiff's evidence should "adequately evaluate the ac-

tual work performed by various faculty members"). Therefore, it cannot be said that the district court erred in holding that Berry's Equal Pay Act claim failed after a trial on the merits.

Accordingly, the judgment of the district court is

AFFIRMED.