**Beatrice SESSOM, Plaintiff,**

v.

**MILWAUKEE DISTRIBUTION CENTER, INC., Defendant.**

**No. DC85–101–NB–O.**

United States District Court,
N.D. Mississippi,
Delta Division.

Oct. 9, 1986.

may vary. *See McClelland,* 606 F.2d at 1287 n. 54.

Jeffrey A. Walker, Jackson, Miss., for plaintiff.

James W. Amos, Hernando, Miss., for defendant.

## MEMORANDUM OPINION

BIGGERS, District Judge.

This cause came before the court on the defendant's motion to dismiss or alternatively for summary judgment. Being fully advised in the premises, the court is now in a position to rule on this motion.

### I. Facts

Plaintiff Beatrice Sessom brought this action against her former employer, defendant Milwaukee Distribution Center, Inc. (hereinafter referred to as "Milwaukee"), alleging religion-based discrimination in violation of 42 U.S.C. § 2000e et seq. (Title VII). This action arose from the following uncontested facts. On May 11, 1981, Sessom was hired primarily as an order puller by Milwaukee, a large warehouse and commercial hand tool operation. Sometime during her employment, Sessom became a member of the Pentecostal faith and professed a religious belief that women should not wear slacks or jeans. In January, 1982, Sessom requested and was denied permission to wear a dress while working on the warehouse floor. At the time of the company's denial, Milwaukee's general foreman explained to Sessom that wearing a dress on the warehouse floor was a safety hazard. During Sessom's employment, Milwaukee's employee handbook contained the following clothing code:

Clothing

For your comfort and safety, you are encouraged to wear clothing acceptable in a factory environment. A long or short sleeved blouse or shirt, pants, or jeans are appropriate attire. If you are operating machinery, you are to avoid wearing any jewelry which might become entangled in the equipment, potentially causing severe injury. While operating machinery, you are also required to wear your shirt or blouse tucked inside of your jeans, knee length shorts or trousers. Your Supervisor will advise you if your dress or jewelry presents a hazard.

Sessom requested two accommodations:

(1) transfer to a position for which dresses are permissible; and

(2) permission to wear a dress on a trial basis to show that wearing a dress is not a safety hazard.

Sessom was not qualified, either because of capability or lack of seniority, for any vacancies at Milwaukee's facility where dresses were allowed. With respect to the second accommodation, Milwaukee refused to give Sessom permission to wear a dress on a trial basis.

Sessom resigned from her employment on June 22, 1984. On July 2, 1984, Sessom filed a charge of religion-based discrimination against Milwaukee with the Equal Employment Opportunity Commission (EEOC). The EEOC issued its determination on the merits of Sessom's charge on January 30, 1985, finding no reasonable cause to believe Sessom's allegation of Milwaukee's discrimination. Sessom filed this action on April 24, 1985.

Milwaukee filed a motion to dismiss or, in the alternative, for summary judgment on the following grounds:

(1) Sessom's untimely filing of her EEOC charge bars this action;

(2) the second accommodation requested by Sessom was unreasonable, as a matter of law; and

(3) 42 U.S.C. § 2000e(j) is unconstitutional under the first amendment.

### II. Timely Filing of an EEOC Charge

The applicable limitations period is set forth in 42 U.S.C. § 2000e–5(e), in pertinent part:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred. . . .

It is well settled that a discrimination charge must be filed with the EEOC within 180 days of the allegedly discriminatory act. *Delaware State College v. Ricks,* 449 U.S. 250, 256, 101 S.Ct. 498, 503, 66 L.Ed.2d 431, 438–39 (1980). Timely filing of a charge with the EEOC is a prerequisite to maintenance of a Title VII suit. *E.g., United Air Lines, Inc. v. Evans,* 431 U.S. 553, 555 n. 4, 97 S.Ct. 1885, 1887 n. 4, 52 L.Ed.2d 571, 576 n. 4 (1977).

Milwaukee contends that the 180–day limitations period began to run in January, 1982, when Sessom requested and was denied permission to wear a dress while working. Milwaukee characterizes its refusal as a discrete and final act and complains that Sessom filed her EEOC charge over two and one-half years after the allegedly discriminatory act.

On the contrary, Sessom argues that Milwaukee's allegedly discriminatory practice was an ongoing policy from the time of her conversion to the Pentecostal faith until her resignation. Sessom relies upon the theory of a continuing violation under an ongoing discriminatory policy. *See Roberts v. North American Rockwell Corp.,* 650 F.2d 823 (6th Cir.1981). *Roberts* involved sex discrimination under Title VII alleged by a female job applicant who made repeated inquiries into job openings. The plaintiff never received a formal rejection notice but was continually told that the company did not hire women. The court in *Roberts* held that the alleged company policy of not considering women for employment gave rise to a clear, continuing violation and that the 180–day limitations period began to run when the plaintiff made her last inquiry. *Id.* at 827–28. The court concluded that "each time the company hires, it violates Title VII so long as its discriminatory policy is in effect." *Id.* at 827. Sessom claims that she continually requested and was denied accommodation of her religious belief. However, unlike the plaintiff in *Roberts,* Sessom received an immediate, unequivocal response from Milwaukee in January, 1982, at the time she requested permission to wear dresses.

The issue before the court is whether the allegedly discriminatory practice of Milwaukee constitutes a continuing violation of Title VII or an isolated act of discrimination. In determining the timeliness of Sessom's EEOC complaint, the court must "identify precisely the '[alleged] unlawful employment practice.'" *See Delaware State College v. Ricks,* 449 U.S. at 257, 101 S.Ct. at 503, 66 L.Ed.2d at 439; 42 U.S.C. § 2000e–5(e). The court finds that the discriminatory practice alleged by Sessom is Milwaukee's refusal to give Sessom permission to wear dresses while working.

The court looks to a recent decision of the fifth circuit for guidance. *Berry v. Board of Supervisors,* 715 F.2d 971 (5th Cir.1983), *appeal after remand* 783 F.2d 1270 (5th Cir.1986). The plaintiff in *Berry,* an associate professor, alleged sex discrimination under Title VII in her work load assignment and discharge from employment. The plaintiff complained that she had been assigned more work for the semester than that assigned to her male colleagues and that the excessive work load prevented her from teaching extramural courses for extra pay. The district court dismissed her Title VII claim for failure to timely file an EEOC charge. On appeal, the court noted that the alleged work load discrimination might have been a continuing violation extending into the actionable 180–day period. 715 F.2d at 981. The court remanded the case for consideration of the continuing violation theory in light of three factors:

The first is subject matter. Do the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation? The second is frequency. Are the alleged acts recurring (e.g., a biweekly paycheck) or more in the nature of an isolated work assignment or employment decision? The third factor, perhaps of most importance, is degree of permanence. Does the act have the de-

gree of permanence which should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate.

783 F.2d at 1273 (quoting *Berry v. Board of Supervisors*, 715 F.2d at 981).

On remand, the district court held that the plaintiff's work load discrimination claim did not constitute a continuing violation:

The allegedly discriminatory act, the assignment of work responsibility, occurred in January of 1977 when assignment of the spring semester duties was finalized. No changes were made thereafter. What allegedly followed thereafter and about which plaintiff complains (deprivation of income, etc.) were results and consequences of the alleged discriminatory acts.

783 F.2d at 1273. Affirming the lower court's ruling, the fifth circuit noted that the plaintiff's work assignment was finalized before the actionable 180–day period and that the plaintiff was aware of the alleged discrimination at the beginning of the semester. 783 F.2d at 1273–74 (citing *Berry v. Board of Supervisors*, 715 F.2d at 982).

In accordance with the guidelines in *Berry*, the court finds that Milwaukee's alleged discrimination occurred in a single transaction in January, 1982, when Sessom requested and was denied permission to wear a dress while working. Milwaukee's refusal was an isolated employment decision which was immediately communicated to Sessom. The only challenged discriminatory act occurred long before Sessom's resignation on June 22, 1984, and mere continuity in employment does not prolong the life of a discrimination claim. 783 F.2d at 1272–73 (citing *Delaware State College v. Ricks*, 449 U.S. at 257, 101 S.Ct. at 503–04, 66 L.Ed.2d at 439; *United Air Lines, Inc. v. Evans*, 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578). Ordinarily, limitations periods commence when the employer's decision is made and communicated to the plaintiff. *Delaware State College v. Ricks*, 449 U.S. at 259, 261, 101 S.Ct. at 504–06, 66 L.Ed.2d at 440, 442 (limitations period commenced when college professor received notice of tenure denial).

In January, 1982, pursuant to its written clothing policy, Milwaukee refused to give Sessom permission to wear a dress at any time during her employment. Clearly, the act has "the degree of permanence which should trigger [Sessom's] awareness of and duty to assert ... her rights." *See Berry v. Board of Supervisors*, 783 F.2d at 1273. The adverse consequence of wearing slacks or jeans as long as Sessom was employed by Milwaukee did not involve repeated acts of discrimination. *See United Air Lines, Inc. v. Evans*, 431 U.S. at 558, 97 S.Ct. at 1889, 52 L.Ed.2d at 578 (distinction between a present violation and continuing impact of a past violation). The court finds that Milwaukee's decision was permanent in that the adverse consequence in Sessom's daily work did not depend upon a continuing intent to discriminate.

In arguing the continuing violation theory, Sessom alleges that she continually requested accommodation of her religious belief and that Milwaukee continually refused to accommodate her. Such requests are in the nature of a request for reconsideration of Milwaukee's final decision. However, requests to reconsider cannot extend the limitations period. *Delaware State College v. Ricks*, 449 U.S. at 261 n. 15, 101 S.Ct. at 506 n. 15, 66 L.Ed. at 442 n. 15. The Supreme Court explained the dual purpose of the limitations periods applicable to the civil rights laws:

The limitations periods, while guaranteeing the protection of the civil rights laws to those who promptly assert their rights, also protect employers from the burden of defending claims arising from employment decisions that are long past.

*Id.* at 256–57, 101 S.Ct. at 503, 66 L.Ed.2d at 439.

### III. Conclusion

The court concludes that the applicable 180–day limitations period began to run in January, 1982, when Sessom requested and was denied permission to wear a dress while working. Sessom filed her EEOC charge on July 2, 1984, over two and one-half years after the "alleged unlawful employment practice occurred." *See* 42 U.S.C. § 2000e–5(e). Since Sessom failed to file her EEOC charge within the 180–day limitations period, the court further concludes that this action is barred. Therefore, it is unnecessary for the court to consider the remaining issues.

Milwaukee's motion for summary judgment is well taken and should be granted.

An order will issue accordingly.