**Affirmed and Opinion Filed July 22, 2016**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00078-CV

**MARIE-ALDA GILLES-GONZALEZ, PH.D, Appellant**
**V.**
**UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER, Appellee**

**On Appeal from the 162nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-09517**

## MEMORANDUM OPINION

Before Justices Myers, Whitehill, and Schenck
Opinion by Justice Schenck

Appellant Marie-Alda Gilles-Gonzalez, Ph.D filed suit against appellee University of Texas Southwestern Medical Center ("UTSWMC") for employment discrimination. The trial court granted UTSWMC's amended plea to the jurisdiction in part, dismissing Gilles-Gonzalez's claims. Because we conclude (1) we have jurisdiction over the appeal, and (2) Gilles-Gonzalez filed her complaint with the Texas Workforce Commission more than 180 days after the date the alleged unlawful employment practice occurred, we affirm the trial court's judgment. *See* TEX. LAB. CODE ANN. § 21.202 (West 2015) (statute of limitations).

## BACKGROUND

Gilles-Gonzalez has been employed by UTSWMC since 2002 as a professor of biochemistry. She is a tenured Associate Professor. In this lawsuit, she variously contends that because she is female, black, of Haitian origin, and a spouse in a mixed-race marriage, UTSWMC reassigned her laboratory space and transferred equipment previously dedicated to her research.

Gilles-Gonzalez filed a charge of discrimination with the Texas Workforce Commission ("TWC") on November 15, 2013. In her charge she alleged that on or about January 22, 2013, UTSWMC notified her that the laboratory space assigned to her for her research was to be reassigned. Equipment dedicated to her research would be subject to transfer to other laboratories or departments, and she was to remove her personal belongings from the space. Her laboratory was disassembled and her equipment was offered to other researchers. She alleged that UTSWMC's actions were made on the basis of her gender, race, national origin, and mixed-race marriage. In the box entitled "Date(s) discrimination took place, Earliest, Latest" on the TWC charge form, Gilles-Gonzalez answered "January 22, 2013—ongoing."

The TWC issued a dismissal and notice of right to file a civil action on June 30, 2014, and Gilles-Gonzalez filed this suit on August 28, 2014, alleging violations of both the Texas Labor Code and the Texas Constitution. UTSWMC filed a plea to the jurisdiction, alleging among other arguments that Gilles-Gonzalez failed to exhaust her administrative remedies prior to filing the lawsuit. UTSWMC pleaded that Gilles-Gonzalez's charge of discrimination alleged January 22, 2013, as the date on which the discriminatory action occurred, but Gilles-Gonzalez did not file the charge until November 15, 2013, more than 180 days later and accordingly after the applicable statute of limitations had run.

Gilles-Gonzalez responded that UTSWMC's actions occurred over the course of several months and constituted a continuing violation, so that her charge of discrimination was timely. She argued that relevant events took place within the 180-day period before she filed her charge. In her affidavit accompanying her response, Gilles-Gonzalez did not make any reference to the January 22, 2013 date alleged in her charge. Instead, she testified that she learned of UTSWMC's discriminatory actions in March, 2013, when students and colleagues began coming to her laboratory to view her equipment. She stated that before this time she had not had any communication with Dr. Steven McKnight, the chair of the department of biochemistry, regarding any decision to disassemble her laboratory and reassign the space to other faculty.

Gilles-Gonzalez also testified that between March and May, 2013, she was led to believe that her laboratory equipment would be reassembled in a different space. On May 3, 2013, McKnight offered to restore some of her equipment, and on June 4, 2013, some of her equipment and supplies were returned to her for her use. In a letter dated October 15, 2013, Gilles-Gonzalez demanded that UTSWMC "restore my lab to a fully functional state without delay." The letter began, "On Thursday, March 28, 2013 between 2:30–3:30 p.m., there was a free-for-all in my laboratory during which the faculty, mostly from Biochemistry, were *invited* by Ms. Angela Houston, on behalf of Mr. McKnight, to remove all my equipment, supplies, and a wall of shelves full of chemicals to their labs." The letter continued, "Although I was told that my lab was being relocated to make room for individuals from the Infectious Disease Department, at least half of the space remains unused and in a shamble." Although "most of the larger, tagged, and still-intact equipment [was] recovered in May," it was "crammed into a room of 400 square feet" and "is not functional at all." The letter detailed the specific equipment and supplies Gilles-Gonzalez needed for her work, and stated that the dismantlement of her laboratory and the

loss of eight months of work was "causing great damage to my well-respected 35-year career." UTSWMC did not respond to the letter.

Although not asserted as a basis for her current claim of discrimination, Gilles-Gonzalez detailed in her affidavit other acts of alleged discrimination leading up to the reassignment of her lab. In 2010, her base salary was lowered. In 2011, McKnight gave her a satisfactory faculty review but initially ignored grants she obtained, and her pay was again reduced. In 2012, Gilles-Gonzalez's husband's position in UTSWMC's biochemistry department was eliminated due to a reduction in force. McKnight gave Gilles-Gonzalez an unsatisfactory evaluation in March 2012, without any input from her. And in August 2012, she was notified that her supplemental salary for the 2013–14 term would be zero. She also testified that "[s]ince I was hired in 2002, the [UTSWMC] department of biochemistry has employed no other black females, no other Haitians, no black males, and currently has only five females out of thirty full and part-time employees."

After the parties filed amendments to the plea to the jurisdiction and response and Gilles-Gonzalez amended her petition, the trial court granted UTSWMC's plea in part, dismissing Gilles-Gonzalez's claims under the Texas Labor Code. This appeal followed.

### APPLICABLE LAW AND STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea; its purpose is to defeat a cause of action without regard to whether the claims asserted have merit. *Ollie v. Plano Indep. Sch. Dist.*, 383 S.W.3d 783, 789 (Tex. App.—Dallas 2012, pet. denied). A plea challenges the trial court's authority to decide a case. *Heckman v. Williamson Cnty.,* 369 S.W.3d 137, 149 (Tex. 2012). The existence of subject-matter jurisdiction is a question of law; thus, we review de novo the trial court's ruling on a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226, 228 (Tex. 2004).

–4–

The plaintiff has the burden to affirmatively demonstrate the trial court has subject matter jurisdiction. *Heckman,* 369 S.W.3d at 150; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.,* 852 S.W.2d 440, 446 (Tex. 1993). While we begin our analysis with the live pleadings, we may also consider evidence relevant to the jurisdictional inquiry and must consider such evidence when it is necessary to resolve the jurisdictional issue. *Heckman,* 369 S.W.3d at 150. "We construe the plaintiff's pleadings liberally, taking all factual assertions as true, and look to the plaintiff's intent." *Id.* We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction or if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction. *Id.* "If a claim is not within a court's jurisdiction, and the impediment to jurisdiction cannot be removed, then it must be dismissed." *Am. Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 805 (Tex. 2001).

A complaint alleging unlawful employment practices must be filed with the TWC "not later than the 180th day after the date the alleged unlawful practice occurred." TEX. LAB. CODE ANN. § 21.202. The exhaustion of administrative remedies is a jurisdictional prerequisite to filing suit for unlawful employment practices. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.2d 490, 492 (Tex. 1996) (per curiam).

A plaintiff may not recover for "discrete acts of discrimination or retaliation" that occur outside the limitations period. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 105 (2002). The limitations period begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition. *Specialty Retailers, Inc.*, 933 S.W.2d at 493; *see also Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 507 (Tex. 2012) (*Specialty Retailers, Inc.* is "controlling authority for interpreting when an unlawful employment practice occurs").

In contrast to claims alleging "discrete acts" such as termination, failure to promote, denial of transfer, or refusing to hire, *see Morgan*, 536 U.S. at 114, a plaintiff may also allege a "continuing violation," that is, "unlawful discrimination that 'manifests itself over time, rather than [as] a series of discrete acts.'" *See Univ. of Tex. v. Poindexter*, 306 S.W.3d 798, 808 (Tex. App.—Austin 2009, no pet.) (quoting *Wal-Mart Stores, Inc. v. Davis*, 979 S.W.2d 30, 41–42 (Tex. App.—Austin 1998, pet. denied)). When "continuing violation" discrimination occurs, "the 180-day filing clock does not begin to run until one of the involved discriminatory events 'should, in fairness and logic, have alerted the average layperson to act to protect his or her rights.'" *Id.* (quoting *Davis*, 979 S.W.2d at 42). "When a charge is timely filed as to one act of discrimination, the doctrine of continuing violation expands the scope of those discriminatory events that are actionable, as long as one of the events occurs within the 180-day period." *Davis*, 979 S.W.2d at 41 (citing *Glass v. Petro-Tex Chem. Corp.*, 757 F.2d 1554, 1560–61 (5th Cir. 1985)).[1]

## DISCUSSION

### A. Sufficiency of UTSMC's pleadings

In her first issue Gilles-Gonzalez contends the trial court erred by granting the plea to the jurisdiction "based on a condition precedent that Appellee failed to specifically deny." Citing rule 54 of the Texas Rules of Civil Procedure, Gilles-Gonzalez argues (1) she pleaded she has met all conditions precedent and exhausted all administrative remedies; and (2) in its answer, UTSWMC did not specifically deny any condition precedent she failed to meet. *See* TEX. R. CIV. P. 54 (Conditions Precedent). She therefore concludes she was not required to prove she exhausted her administrative remedies in order to recover on her claim, and "the trial court erred

---

[1] Because one purpose of Chapter 21 of the Labor Code is "to bring Texas law in line with federal laws addressing discrimination, federal case law may be cited as authority." *Specialty Retailers, Inc.*, 933 S.W.2d at 492; *see also Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 798 n.1, 804 n.25 (Tex. 2010). As we have explained, Gilles-Gonzalez alleges claims that arise out of Chapter 21.

in granting a plea to the jurisdiction based on Appellant's alleged failure to satisfy a condition precedent before filing suit."

The question before the trial court and before this Court, however, is whether the trial court lacks subject matter jurisdiction over Gilles-Gonzalez's claims. *See, e.g., Harris Cnty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004) (plea to jurisdiction is dilatory plea that seeks dismissal of case for lack of subject matter jurisdiction). If Gilles-Gonzalez did not exhaust her administrative remedies, then the trial court did not have jurisdiction over her employment discrimination and retaliation claims, and it properly granted UTSWMC's plea to the jurisdiction with respect to those claims. *See Santi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 804 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (failure to timely file administrative complaint deprives Texas trial courts of subject matter jurisdiction).

We may consider UTSWMC's claim of immunity regardless of whether the trial court ruled on the question of its jurisdiction and regardless of the specificity of UTSWMC's denial of conditions precedent. *See Rusk State Hosp. v. Black*, 392 S.W.3d 88, 95 (Tex. 2012) (immunity from suit is issue of subject matter jurisdiction that may be raised for first time on interlocutory appeal of unrelated ruling); *Ollie*, 383 S.W.3d at 789 (rejecting argument that appellees waived their claim to immunity by filing general denial). And as in *Ollie*, UTSWMC pleaded its governmental immunity as an affirmative defense, as well as pleading that Gilles-Gonzalez failed to exhaust her administrative remedies. *See id.* The trial court properly considered the question of its jurisdiction over Gilles-Gonzalez's claims, and we may consider the same question in this appeal. *See Rusk State Hosp.*, 392 S.W.2d at 95. We decide Gilles-Gonzalez's first issue against her.

## B.     Timeliness of Gilles-Gonzalez's administrative complaint

In her second issue Gilles-Gonzalez contends that because she "timely filed an administrative complaint under a continuing violation theory," the trial court should not have granted UTSWMC's plea to the jurisdiction.  Gilles-Gonzalez argues that UTSWMC's actions concerning her lab and lab equipment "were part of a series of related and equivocal actions initiated and accomplished by [UTSWMC] over the course of a several month span, some of which occurred in the 180 day period prior to the filing of Appellant's charge."  None of UTSWMC's actions, she argues, were "discrete," such as termination, failure to promote, denial of transfer, or refusal to hire.  *See Morgan*, 536 U.S. at 114.  Instead, she argues, UTSWMC's actions were "more analogous to hostile environment cases," involving repeated conduct that does not occur on any particular day and may not be actionable on its own.  *See id.* at 115.  Gilles-Gonzalez concedes she is not asserting a claim for a hostile work environment, but argues that we should apply the "continuing violation" analysis nonetheless because all of the relevant factors for a continuing violation are met.

To determine if Gilles-Gonzalez's charge of discrimination was timely, we first consider whether it was filed "not later than the 180th day after the date the unlawful employment practice occurred."  TEX. LAB. CODE ANN. § 21.202(a).  In *Morgan*, the Court explained that "[a] discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'"  *Id.* at 110.  A party must file a charge within 180 days of the date of the act or lose the ability to recover for it.  *See id.*  "Discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges."  *Id.* at 113.  The limitations period begins to run on the date the discriminatory act occurred, not on the date "the victim first perceives that a discriminatory motive caused the act."  *Merrill v. S. Methodist Univ.*, 806 F.2d 600, 605 (5th Cir. 1986) (citing *Del. State College v. Ricks*, 449 U.S. 250, 258 (1980)); *see also Specialty Retailers, Inc.*, 933

S.W.2d at 493 (limitations period begins when employee is informed of allegedly discriminatory employment decision, not when that decision comes to fruition).

Gilles-Gonzalez contends that neither the January letter nor her required move and loss of equipment in March were "discrete" acts that in logic and fairness would have alerted the average layperson of the need to seek a lawful remedy. She argues that under the plain meaning of "discrete," the acts "did not have the same degree of permanence as those such as firing," and "were not independent of one another." She also argues that the acts were not "complete on a given day," citing *Ortega v. Housing Authority of the City of Brownsville*, 572 F. Supp. 2d 829, 836 (S.D. Tex. 2008).[2] And citing *Abrams v. Baylor College of Medicine*, 805 F.2d 528, 533 (5th Cir. 1986), she argues that there is a continuing violation where "the employer's ambiguous acts serve to obscure the existence of an unlawful policy and fail to alert the average lay person to act to protect his rights," and where "[plaintiffs] ha[ve] a reasonable basis for assuming" that the employer's decision is "not a final one."

But courts have not limited "discrete" acts to the four listed in *Morgan*. In *Cooper-Day v. RME Petroleum Corp.*, 121 S.W.3d 78, 86 (Tex. App.—Fort Worth 2003, pet. denied), for example, the court concluded that failure to provide the plaintiff with an assistant and assignment of an extra region to her were "discrete acts." *See also Ptomey v. Tex. Tech Univ.*, 277 S.W.3d 487, 494 (Tex. App.—Amarillo 2009, pet. denied) (identifying "demotion, removal from office facility, and reassignment of subordinate staff" as "discrete employment actions"); *Santi*, 312 S.W.3d at 806 (decision not to renew plaintiff's contract and denial of right to license derivative materials were discrete acts). And we disagree that UTSWMC's acts were ambiguous or not complete on a given day. The January letter explicitly informed Gilles-Gonzalez that (1) "the

---

[2] In *Ortega*, the court applied the three-factor test we discuss below, and concluded the plaintiff had not established that the continuing violations doctrine applied because "each event was sufficiently permanent to trigger a reasonable person to act to protect his rights." *Ortega*, 572 F. Supp.2d at 836.

Dean's Office has reassigned the office and laboratory space . . . occupied by you"; (2) "[t]hese rooms must be cleared of all personal belongings on or before March 18, 2013"; (3) lab equipment may be designated for transfer, placed in storage, or left in place and transferred for use; and (4) a specific new office in a different building was designated for her use. In her affidavit, Gilles-Gonzalez stated that "[i]n early March, 2013," after students and other faculty had come to her laboratory to view her equipment, she "received a notice that the research laboratory that was assigned to me for my exclusive use was to be disassembled, and the space reassigned to other faculty. Prior to this notification, I had not had any communication with Dr. McKnight regarding this decision." On March 12, 2013, Gilles-Gonzalez "requested that my research equipment and supplies be stored for my use in the future," and "complained that the office space to which I was reassigned was not vacant." And on March 28, 2013, the "free-for-all" in Gilles-Gonzalez's lab occurred in which other faculty members removed "all my equipment, supplies, and a wall of shelves full of chemicals to their own labs."

The record demonstrates that UTSWMC's decision was made on or before January 22, 2013, brought to Gilles-Gonzalez's attention no later than March 12, 2013, and acted upon no later than March 28, 2013, according to Gilles-Gonzalez's own charge and affidavit. As Gilles-Gonzalez noted, these acts and communications all followed in the wake of other unambiguous acts affecting her and her husband between 2010 and 2012. In all events, there was nothing ambiguous about UTSWMC's decision. UTSWMC acted upon and carried out its decision. Gilles-Gonzalez was aware of the decision and UTSWMC's actions were a direct result of it. The reassignment of Gilles-Gonzalez's lab and the transfer of her equipment was a discrete act that "happened" on a specific date. *See Morgan*, 536 U.S. at 110; *Ricks*, 449 U.S. at 258 ("In sum, the only alleged discrimination occurred—and the filing limitations periods therefore commenced—at the time the tenure decision was made and communicated to Ricks. That is so

–10–

even though one of the *effects* of the denial of tenure—the eventual loss of a teaching position—did not occur until later.").

But Gilles-Gonzalez contends that because UTSWMC took subsequent actions in an attempt to mitigate the effect of its decision, there was no discrete act. She points to evidence that (1) between March and May, she was led to believe that her lab equipment would be reassembled in a different space; (2) in March, McKnight cleared some of his own lab space for her use; (3) on May 3, 2013, McKnight offered to restore some of her equipment; and (4) on June 4, 2013, some of her equipment was returned for her use. On a timeline in her appellate brief, she also cites dates of May 21, 2013, when UTSWMC began work on collecting specific equipment to be returned to her, and October 15, 2013, when she requested return of her equipment to allow research under a grant she had obtained but UTSWMC did not respond. She contends these subsequent actions established a continuing violation, so that her charge of discrimination was timely filed.[3]

There are three factors courts consider to determine whether alleged discriminatory acts are related closely enough to be continuing violations or whether they are "merely discrete, isolated, and completed acts which must be regarded as individual violations." *Berry v. Bd. of Supervisors of La. State Univ.*, 715 F.2d 971, 981 (5th Cir. 1983). The court in *Berry* identified these factors as (1) subject matter, (2) frequency, and (3) degree of permanence. *Id.* The court emphasized, however, that "[t]his inquiry, of necessity, turns on the facts and context of each particular case." *Id.* The court discussed the three factors "but by no means consider[ed them]

---

[3] Gilles-Gonzalez does not claim that the actions of UTSWMC were so plainly misleading as to amount to an estoppel to the later assertion of a limitations or jurisdictional bar. *See, e.g., Fiengo v. Gen. Motors Corp.*, 225 S.W.3d 858, 861–62 (Tex. App.—Dallas 2007, no pet.) (equitable estoppel is defense to limitations if plaintiff proves false representation or concealment of material fact, made with knowledge of true facts, to party without knowledge or means of knowledge of true facts, with intention it be acted upon, and detrimental reliance). We accordingly do not consider the issue.

to be exhaustive." *Id.*  And as the court noted, "[c]ase law on the subject of continuing violations has been aptly described as 'inconsistent and confusing.'" *Id.* at 979 n.11 (citations omitted).

Gilles-Gonzalez contends that each of these factors is met.  As to the first factor, the *Berry* court considered whether "the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation." *Id.*  Gilles-Gonzalez argues that UTSWMC's actions do involve "the same type of discrimination, as they are limited to those reassigning, removing, and incompletely restoring Appellant's lab and lab equipment."  While we agree that the specified actions pertained to Gilles-Gonzalez's lab and equipment, we question whether UTSWMC's attempts to mitigate the effect of its decision by returning equipment and clearing other lab space are "discriminatory" acts at all.

Next, the *Berry* test for "frequency" is whether the "alleged acts [are] recurring (*e.g.*, a biweekly paycheck) or are more in the nature of an isolated work assignment or employment decision." *Berry*, 715 F.2d at 981.  Again, Gilles-Gonzalez relies on the return of some of her equipment and the promise of other lab space as recurring discriminatory acts.  As we have discussed, however, UTSWMC made a single decision in January—that Gilles-Gonzalez's lab space was to be reassigned.  As Gilles-Gonzalez explained in her charge of discrimination, the disassembly of her laboratory "effectively prevented Complainant from performing important research for which she was hired to do, and impedes her ability to teach."  It was UTSWMC's initial decision that affected Gilles-Gonzalez's ability to perform her job, not subsequent attempts to mitigate the effect of the decision or subsequent failures to reverse the decision.

Last, the *Berry* test for "degree of permanence" is whether the act "should trigger an employee's awareness of and duty to assert his or her rights, or which should indicate to the employee that the continued existence of the adverse consequences of the act is to be expected without being dependent on a continuing intent to discriminate." *Berry*, 715 F.2d at 981.  Gilles-

Gonzalez argues that it was reasonable to believe "her supervisor's own assurances" that the decision made in January was not permanent, in light of the return of some of her equipment and the clearing of his own lab space for her.

As we have discussed, Gilles-Gonzalez relies on *Abrams* in support of this argument. *See Abrams*, 805 F.2d at 533 (continuing violation existed where "employer's ambiguous acts serve to obscure the existence of an unlawful policy and fail to alert 'the average lay person to act to protect his rights'") (quoting *Glass*, 757 F.2d at 1561). In *Abrams*, Jewish physicians complained that Baylor unlawfully excluded them from a lucrative rotation program in a hospital in Saudi Arabia because of their religion. *Id.* at 530. The court held that although the doctors filed their complaints more than 180 days after they were told that "visa problems" precluded their inclusion in the program, the trial court could have concluded that neither doctor had "enough information by which a 'reasonably prudent person similarly situated' could have realized that he was the victim of illegal discrimination." *Id.* at 534 (citing *Glass*, 757 F.2d at 1560). The court explained that that "a reasonably prudent employee will not necessarily conclude that his employer is an illegal discriminator on the basis of one conversation and one at least arguably nondiscriminatory act." *Id.* The doctors were allowed to sue because their rejection was linked to their final exclusion from the program within 180 days of their complaint. *Id.*

In contrast, as Gilles-Gonzalez herself alleges, the 2013 reassignment of her lab followed at least two years of actions she describes as discriminatory, including unjustified negative evaluations, salary reductions, and her husband's termination. As she argues in her brief, discriminatory acts not made the basis for a timely charge "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *See United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977). She testified that since her hiring in 2002, the

–13–

department of biochemistry had not employed any other black females, Haitians, or black males, and employed only a handful of females in a staff of thirty. Given Gilles-Gonzalez's knowledge of this history, we conclude that a reasonably prudent person similarly situated could have realized that she was the victim of illegal discrimination when she was given notice that her lab and equipment were to be reassigned. *See Abrams*, 805 F.2d at 534.

Finally, the *Abrams* court also made clear that "to establish a continuing violation, a plaintiff must show some application of the illegal policy to him (or to his class) within the 180 days preceding the filing of his complaint." *Id.* at 533. Other courts have explained that "a plaintiff must show an organized scheme leading to and including a present violation, so that it is the cumulative effect of the discriminatory practice, instead of any discrete occurrence, that gives rise to the cause of action." *See Cooper-Day*, 121 S.W.3d at 86 (quoting *Huckabay v. Moore*, 142 F.3d 233, 238–39 (5th Cir. 1998)). Gilles-Gonzalez does not allege a "present violation" that occurred in the 180 days preceding the filing of her complaint on November 15, 2013. The events between May and October 2013 detailed above are effects of UTSWMC's decision and actions in January and March, not "present violations" that are the culmination of an organized scheme. *See Ricks*, 449 U.S. at 258 (discrimination occurred when tenure decision was made and communicated, even though effects of denial of tenure did not occur until later).

We conclude that UTSWMC's decision to reassign Gilles-Gonzalez's laboratory space and equipment was a "discrete" act that occurred more than 180 days prior to the date she filed her charge of discrimination. Because her charge was not filed by "the 180th day after the date the alleged unlawful employment practice occurred," Gilles-Gonzalez failed to exhaust her administrative remedies, and the trial court had no jurisdiction of her claim. *See Specialty Retailers, Inc.*, 933 S.W.2d at 492. The trial court did not err by granting UTSWMC's plea to

–14–

the jurisdiction on Gilles-Gonzalez's claims for violations of the Texas Labor Code. We decide

Gilles-Gonzalez's second issue against her.

**CONCLUSION**

We affirm the trial court's judgment.


/David J. Schenck/
DAVID J. SCHENCK
JUSTICE

160078F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MARIE-ALDA GILLES-GONZALEZ,
PH.D, Appellant

No. 05-16-00078-CV     V.

UNIVERSITY OF TEXAS
SOUTHWESTERN MEDICAL CENTER,
Appellee

On Appeal from the 162nd Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-09517.
Opinion delivered by Justice Schenck;
Justices Myers and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

It is **ORDERED** that appellee University of Texas Southwestern Medical Center recover
its costs of this appeal from appellant Marie-Alda Gilles-Gonzalez, Ph.D.

Judgment entered July 22, 2016.